***********
This matter was reviewed by the Full Commission based on the record of the proceedings before Deputy Commissioner Gheen, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Opinion and Award of the Deputy Commissioner.
 *********** EXHIBITS
Plaintiff (hereinafter "Lee") offered various medical records at hearing that defendants (hereinafter collectively "Manpower") stipulated. The documents below, denominated "Court," were received following the hearing before the deputy commissioner pursuant to directives issued at hearing. The following documents are introduced into evidence as:
1. Stipulated Exhibit #1: Lee's medical records.
2. Court #1: North Carolina Department of Health and Human Services report.
3. Court #2: Medical records of Dr. Charles P. Bond (hereinafter "Dr. Bond").
4. Court #3: Medical records of Dr. Dan. A. Gold.
 ***********
The competent evidence of record engenders the following:
 FINDINGS OF FACT
1. Lee was forty-three years old on the date of hearing. Prior to her employment by Manpower, Lee was a meat packer for approximately eight years.
2. On September 15, 1999, Manpower employed Lee, assigning her to Allied Diecasting. Lee performed different duties at Allied involving the use of her hands generally with fine motor manipulation and grasping. She was last assigned to file metal flashings used in the construction of lawn mower housings. The filing was hard to perform in any single position and Lee, therefore, changed body positions as needed to perform her duties.
3. Lee performed filing for one day on October 18, 1999. At the end of the workday, Lee's fingers started swelling on her right hand and both thumbs were numb. She can recall nothing unusual that occurred while she was working.
4. Lee called Manpower the next morning reporting her condition. Manpower arranged a medical examination for Lee at Occupational Medicine in Rutherford Hospital on October 19, 1999. Lee demonstrated positive results for mild nerve compression; a mild Phalen test, a positive Tinel sign and a negative Finkelstein test. The initial diagnosis was right wrist tendonitis. Wrist splints, medications and an exercise regimen were prescribed. She was released to return to work with restrictions of no lifting greater than fifteen to twenty-five pounds periodically, rotation of job duties every three or four hours and limited use of both hands, especially repetitive motions.
5. Manpower filed a Form 19, Employer's Report of Employee's Injury to the Industrial Commission, on or about October 20, 1999. Manpower reported Lee developed swelling and numbness to her left thumb and right index finger and thumb as a result of a sprain. The information on the Form 19 is consistent with the initial diagnosis at Occupational Medicine.
6. Lee returned to Occupational Medicine on October 26, 1999. Lee reported she had obtained minor relief from her symptoms, but her hands continued to be very swollen at the end of work. Medical care providers observed mild edema in the right hand greater than the left. Compression, Tinel and Phalen tests were again positive. Lee's diagnosis changed to bilateral, right greater than left wrist tendonitis versus early carpal tunnel syndrome. Splints and medications, including several new medications, were continued. Occupational Medicine wanted to refer Lee for physical therapy, but Manpower would not authorize the treatment. Occupational Medicine referred Lee for nerve conduction studies at Neurological Associates of Rutherford. Manpower authorized the studies.
7. Lee was released to return to work on October 26, 1999. No physical restrictions were assigned because she was not working at the time. Her medical care provider noted that if Lee returned to work she should avoid jobs requiring repetitive motions.
8. Lee unsuccessfully attempted to return to work for two days at Manpower. Lee had a one-day assignment on November 1, 1999 and another one-day assignment on November 8, 1999. Lee has not worked at Manpower or any other employment for two and one-half years as of the date of hearing in this matter. She has sought employment at Rutherford County Schools, Dollar General Store in a position other than a cashier, and at a food store.
9. Dr. Anne M. Jackson (hereinafter "Dr. Jackson") performed nerve conduction studies on November 23, 1999. The results demonstrated mild to moderate bilateral carpal tunnel syndrome.
10. Manpower referred Lee to Dr. Charles D. Bond (hereinafter "Dr. Bond"). Dr. Bond examined Lee on December 21, 1999 and diagnosed bilateral carpal tunnel syndrome. Surgery was recommended but not authorized by Manpower. Lee's splints were continued and prescription medication prescribed. Dr. Bond restricted Lee to, no lifting greater than ten pounds, no repetitive motion of the hands and no strenuous gripping.
11. Manpower filed three Industrial Commission Forms on January 10, 2000 as follows:
 a) Form 60, Employer's Admission of Employee's Right to Compensation Pursuant to N.C. Gen. Stat. § 97-18(b). The Form 60 (emphasis added) advised Lee that Manpower "admits your right to compensation for an [x] injury by accident on October 18, 1999." The section admitting an occupational disease is blank. Manpower also stamped the document "Subject To Wage Verification." The description of the injury was "Left Thumb Right Index Finger," but the method of injury was not mentioned. Manpower reported that disability resulted on October 26, 1999 and compensation commenced on October 26, 1999.
 b) Form 28, Return to Work Report. Manpower reported that Lee's disability began on October 19, 1999 and ended on November 2, 1999, the date that Lee secured one day of employment.
 c) Form 28B, Report of Employer or Carrier/Administrator of Compensation and Medical Compensation Paid and Notice of Right to Additional Medical Compensation. Manpower indicated that one week of temporary total disability was paid in the amount of $140.41, being paid on December 1, 1999. Medical compensation was reported as $1,420.63, and did not represent final medical compensation. Manpower represented that the report was not final.
12. Manpower offered no reason of record for filing the Form 60 as an "accidental" injury or reasons for denying Lee's claim once the Form 60 had been filed.
13. Dr. Bond examined Lee on January 20, 2000. Lee's condition had not improved and Dr. Bond again recommended surgery. Dr. Bond tentatively scheduled the surgery for the following week. Dr. Bond certified that Lee could return to work with no lifting greater than five pounds and no repetitive motion of the hands. Manpower declined to pay for the surgery.
14. Manpower employed a nurse who accompanied Lee to Dr. Bond's office on both visits and actively engaged Dr. Bond regarding the course of this claim. The greater weight of the evidence establishes that Manpower's nurse communicated with the adjuster in charge of this claim and Manpower was fully aware of Lee's diagnosis of carpal tunnel syndrome on January 10, 2000 when the Form 60 was filed.
15. Manpower's contention at hearing that the Form 60 admits liability for Lee's tendonitis and is not an admission of liability for Lee's carpal tunnel syndrome is unpersuasive. First, Manpower's contention that the Form 60 was filed in response to Lee's initial diagnosis of tendonitis before becoming aware of Lee's carpal tunnel syndrome is not supported by the evidence. The Form 60 was executed on January 10, 2000 when Manpower knew that Lee's condition was diagnosed as carpal tunnel syndrome rather than tendonitis. Manpower's own nurse accompanied Lee to Dr. Bond's office in December 1999 at which time Dr. Bond diagnosed carpal tunnel syndrome. Manpower was also aware of Dr. Jackson's tests. Both Dr. Jackson's report and Dr. Bond's diagnosis were subsequent to Lee's initial diagnosis of tendonitis and preceded the filing of the Form 60. Second, Manpower's contentions that the Form 60 refers to an accident, does not include all of the fingers affected by Lee's carpal tunnel syndrome and does not mention that it is accepting liability for Lee's carpal tunnel syndrome is unconvincing. No contention of an accident was ever made by Lee or suggested by the facts. The Form 60 generally denotes Lee's symptoms in both hands; and, significantly, the Form 60 is completed to accept Lee's claim arising on the specific date of Lee's event. Manpower did not limit the Form 60 in any regard.
16. Lee filed a Form 18 dated March 3, 2000.
17. On March 5, 2000, Lee filed a Form 33. Manpower filed a Form 33R dated May 20, 2002, stating that Lees: "condition" is unrelated to a work injury.
18. Dr. Dale F. Mabe (hereinafter "Dr. Mabe") performed a physical evaluation of Lee for the North Carolina Department of Health and Human Services on April 10, 2001. Dr. Mabe observed generalized soft tissue swelling of the hands and fingers. Lee had positive Tinel, Phalen and Romberg tests. Dr. Mabe diagnosed bilateral carpal tunnel syndrome and recommended surgical evaluation.
19. Dr. Bond opined in a letter dated June 27, 2000 that "it is unlikely that she developed carpal tunnel syndrome de novo from one to two weeks of work at a job, however, I cannot prove the exact causal relationship of her job and carpal tunnel syndrome." Dr. Bond did not express an opinion as to whether Lee's employment at Manpower aggravated Lee's preexisting asymptomatic carpal tunnel syndrome.
20. Lee has proven by the greater weight of the evidence that she is incapable of earning wages at Manpower or any other employment as a result of her bilateral carpal tunnel syndrome. he record evidence also establishes that Lee has sought employment without success. Given Lee's age, former occupational experience with limited transferable skills, and severe medical restrictions imposed by her treating physicians she has been temporarily totally disabled since October 26, 1999, except for the two days she actually worked.
21. The Forms 18, 19 and 60 filed in this case cite an average weekly wage of $255.60 which would yield a weekly compensation rate of $170.41. No other evidence of average weekly wage was introduced.
22. The undisputed evidence is that carpal tunnel surgery could effect a cure, provide relief or lessen Lee's disability.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-18(b) provides in pertinent part:
 When the employer admits the employee's right to compensation, the first installment of compensation payable by the employer shall become due on the fourteenth day after the employer has written or actual notice of the injury or death, on which date all compensation then due shall be paid. . . . Upon paying the first installment of compensation and upon suspending, reinstating, changing, or modifying such compensation for any cause, the insurer shall immediately notify the Commission, on a form prescribed by the Commission, that compensation has begun, or has been suspended, reinstated, changed, or modified. A copy of each notice shall be provided to the employee. The first notice of payment to the Commission shall contain the date and nature of the injury, the average weekly wages of the employee, the weekly compensation rate, the date the disability resulting from the injury began, and the date compensation commenced.
2. Manpower's filing of a Form 60 in the present action constitutes an admission of compensability of Lee's claim, but the Form 60 does not create a presumption as to the nature or extent of Lee's disability. N.C. Gen. Stat. § 97-18(b); Calhoun v. Wayne Dennis Heating AirConditioning, 129 N.C. App. 794, 501 S.E.2d 346 (1998), review dismissed, 350 N.C. 92, 532 S.E.2d 524 (1999) (filing of a Form 60 is an admission of compensability by an employer and constitutes an award of the Industrial Commission pursuant to N.C. Gen. Stat. §§ 97-82 97-87);Sims v. Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277
(2001) (Form 60 does not create a presumption of disability or its extent).
3. The Form 60 filed on January 10, 2000 is sufficient to admit compensability for Lee's carpal tunnel syndrome. N.C. Gen. Stat. §§ 97-18(b) 97-53(13).
4. Lee bears the burden of proof by the greater weight of the evidence as to the nature and extent of her disability. Phillips v. US. Air,Inc., 120 N.C. App. 538, 463 S.E.2d 259 (1995), aff'd, 343 N.C. 302,469 S.E.2d 552 (1996). Lee has proven by the greater weight of the evidence that she is temporarily totally disabled as of October 26, 1999, except for two days of employment, through the date of the hearing and continuing. N.C. Gen. Stat. § 97-29.
5. Lee's weekly compensation rate is ONE HUNDRED SEVENTY AND FORTY-ONE HUNDRETHS DOLLARS. N.C. Gen. Stat. § 97-2(5).
6. The undisputed medical evidence establishes that Lee requires additional treatment that would effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-25 97-25.3; NCIC Rule 407(4).
7. In the discretion of the Industrial Commission a treating physician should be designated. N.C. Gen. Stat. § 97-25.
 ***********
The forgoing Findings of Fact and Conclusions of Law engender the following:
 AWARD
1. Manpower shall pay Lee temporary total disability benefits at the weekly rate of $170.41 from October 26, 1999 (except for two days worked in November 1999), and continuing until further order of the Industrial Commission.
2. Manpower shall pay for all such medical care and treatment that may provide relief, effect a cure or lessen Lee's period of disability.
3. The Medical Nurses Rehabilitation Section of the Industrial Commission shall assign a nurse to this case to assist the Industrial Commission in designating a treating physician for Lee. The nurse assigned shall review the case file in this workers' compensation action and recommend a treating physician to the undersigned within 30 days of the date of this Award. The issue of designation of a primary treating physician for Lee is RESERVED for additional orders.
4. Manpower shall pay the costs.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN